86    633
132    672

86    633
137    75

### United States National Bank of Atchison, Appellant, v. A. B. Crosley *et al.*, Appellees.

1. **Promissory Note:** RIGHT OF ACTION: PLEADING.   Where in an action upon a promissory note, the plaintiff alleges that he is the absolute and unqualified owner of said note, and issue is joined on such averment, proof of such ownership on the part of the plaintiff is necessary to entitle him to recover.

2. ———: ———: OWNERSHIP: EVIDENCE.   The plaintiff's cashier testified that he paid one hundred dollars over the counter for the note in suit, and that such payment was made during banking hours and in the usual course of business, and that the bank was the absolute and unqualified owner of the note.   It appeared, however, that said note was taken, with eleven others, just before maturity, by a resident of this state, to the plaintiff bank in Kansas, and, that about the same time, the plaintiff purchased two other lots of notes, all of which were made at the same town in Iowa, and were payable there; and that the plaintiff received said note from a stranger, who guarantied the genuineness of the signature, the collection thereof, "with all expenses connected therewith," provided said note was placed in the the hands of a firm of attorneys named, who were residents of the town in Iowa where said note was taken.   *Held*, that as, under the instructions of the court, the burden of proof was upon the plaintiff to establish its ownership of said note, the finding of the jury that the plaintiff was not the owner of said note, was not without support under the evidence.

*Appeal from Madison District Court.*—Hon.  J.  H. Henderson, Judge.

Tuesday, October 25, 1892.

ACTION on a promissory note.   There was a judgment for defendants, and the plaintiff appeals.— *Affirmed.*

*Dabney & Guiher*, for appellant.

*John Leonard & Son* and *J. P. Steele*, for appellees.

Granger, J.—The note in suit was originally made by the defendants, A. B. Crosley and William Holton, to M. C. Hillan, or bearer, bearing date January 11, 1888. On the twenty-seventh of the same month it was transferred by Hillan to C. Danforth, of Winterset, Iowa, by indorsement, and about December 28, 1888, it was transferred to the plaintiff bank. It is what is usually called a "Bohemian oats note," and, as between the parties to it, at its inception, it is void. The district court instructed the jury that the plaintiff bank had failed to show, as it was by law required to do, that it it was a good-faith purchaser of the note, without notice of its fraudulent inception, and concluded the instruction as follows:

"Therefore, the plaintiff cannot recover in this case, except that you find from the evidence that it is the owner of the note, and that the witness, C. Danforth, purchased said note before the plaintiff purchased it, and that the said C. Danforth purchased same in the usual course of business, before maturity, for a valuable consideration, and without notice of the defenses to, or the fraudulent and illegal consideration of, said note. If you so find you will return your verdict for the plaintiff. If you fail to so find, you will return your verdict for the defendants."

The instruction is not questioned in the record, and stands as the law of the case. Two facts, then, are necessary to the plaintiff's right of recovery—*first*, that it is the owner of the note; *second*, that C. Danforth was such a holder as to be entitled to protection under the law against the defense of fraud by the payee in obtaining the note. The jury found specially that the plaintiff is not the owner of the note, and also that C. Danforth did not purchase the note without notice of its fraudulent character. If either of such findings

have such support in the record that we should not disturb it, there is no ground for reversing the judgment.

I. It is first urged that the court erred in submitting the question of the plaintiff's ownership to the jury, because ownership is not necssary to a right to maintain the suit; that, "if the plaintiff was the rightful holder for any purpose, it could legally do so." One or two thoughts on this branch should be sufficient. The plaintiff alleged, as the basis of its right to maintain the action, that it was the "absolute and unqualified owner" of the note. Issue was taken on the averment, and the proofs were all directed to that conclusion. It is the issues presented by the pleadings that are to be tried, and in this case, ownership of the note was one of them. Under the allegations, if there was no ownership by the plaintiff, it had no right of action.

1. PROMISSORY note: right of action: pleading.

II. It is also said that the finding that the plaintiff did not own the note is not supported by the evidence. In view of the condition of the evidence on this branch of the case, it is important to have in mind the party on whom rests the burden of proof. The court said to the jury that, "the note being fraudulent at its inception, the burden of proof is upon the plaintiff to establish * * * that it is the owner and the holder of the note." The instruction is not questioned. Taking it, as we must, as the proper guide, and the inquiry is not, is there a failure to disprove the ownership, but is there a failure to prove it. Absence of testimony on the point is fatal to the plaintiff, and not to the defendants.

2. ——: ——: ownership: evidence.

A quite significant fact in this connection is this: The plaintiff must be regarded as having taken the note with knowledge that it was fraudulently obtained, for, with the burden upon it to show that it took the note without notice, it failed to do so, and hence the

legitimate inference that it took with notice.

One L. A. Wheeler was the acting or assistant cashier of the plaintiff bank, and a witness for the plaintiff. He testified that he was the business manager of the plaintiff in December, 1888, and, as such, had control of the discounting of commercial and other paper at that time; that he paid over the counter of the bank, for the note in suit, one hundred dollars, during banking hours, in the usual course of business, and that the bank was the absolute and unqualified owner of the note. The note, with eleven others, was taken to the bank on the day of the transfer by one William Fennimore, who was a farmer in Marion county, and who presented a letter as follows:

"CITIZENS' NATIONAL BANK,

"WINTERSET, IOWA, Dec. 18, 1888.

"*To whom it may concern:*

"DEAR SIR—This will introduce to you one of the well-to-do farmers of this county, Mr. William Fennimore, who owns several acres of land in this and other counties in Iowa, also other property of considerable amount, and we consider him perfectly good for thirty thousand dollars. Mr. Fennimore is a man with good character, and honest and honorable in all his dealings, as far as we know. The signature of Mr. Fennimore appears below.

"Resp't,

"W. J. CORNELL,    [SEAL.]
"Cashier.

"WILLIAM FENNIMORE."

On the twentieth of December, eight days before, Mr. Fennimore was there, and Mr. Wheeler, for the bank, purchased about twenty such notes, varying in amount from one hundred dollars to three hundred dollars, and those transferred on the twenty-eighth varied in amounts from one hundred dollars to five hundred dollars. On the twenty-ninth day of December, 1888, one

G. W. Hogg sold to the bank, through Mr. Wheeler, six notes, aggregating some one thousand, four hundred dollars.   All of the notes thus bought were made at Winterset, Iowa, and payable there.   Both Fennimore and Hogg were entire strangers to the bank and its officers.   Each gave, with the notes he transferred, his written guaranty of the genuineness of the signatures to the notes and of the collection thereof, "with all expenses connected therewith."   In the guaranty of Mr. Fennimore, as to a part of the notes, including the one in suit, is a proviso that "the notes are placed in the hands of Dabney & Guiher for collection." These attorneys are residents of Winterset, Iowa.   It is very manifest that these notes were taken from Winterset, Iowa, to Atchison, Kansas, with a view to so place them as to compel defrauded parties to pay them.   It is a legitimate inference that they could not be negotiated to home bankers or capitalists.   The record is such that the jury might believe that Wheeler knew, when these notes were presented in such numbers, and so nearly due, that the bearers of them were on a mission of fraud, as was really true, and seeking for some one to act as "innocent holders," and aid in its accomplishment.   The situation of the bank is this:   It knew or had notice, as the court instructed, that these notes were obtained by fraud. It knew the makers resided in Iowa, and that the notes must be returned there for payment.   It had good reason to know that the notes were offered for discount in that distant market, when so nearly due, for fraudulent purposes.   Under such circumstances, it must have known that if it purchased the notes it would be a party to such a fraudulent scheme, as it really must have been.   None of these facts are less true because the bank had the guaranty of Fennimore, on which Wheeler says it relied.   The transaction is an unusual one as to its facts.   It will be a blight on

the integrity of banking if such transactions are to have the sanction of the law. Now we meet this proposition: The jury evidently did not, in view of all the facts, believe the statement of Wheeler that the notes were actually purchased. The facts are as consistent with a fraudulent combination in making the transfer without an actual sale as they are with a *bona fide* sale. It was fraudulent in any view of the case, under the record. Are we, then, to say that the jury must take the statement of Wheeler that the notes were actually purchased, and set aside its finding, as we are asked to do, or shall we say that, in view of the discrediting circumstances, it was a question of fact for the jury? We think, unmistakably, the latter. Other facts in the record might strengthen this conclusion, but we need not cite them. With the burden on the defendants, the case would be quite different. With the burden where it is, the fact that bad faith is attributable to the bank from its failure to show good faith, makes the case quite exceptional and difficult for the plaintiff.

The conclusion makes it unnecessary to consider the question of the good faith of Danforth's holding, for without ownership the plaintiff cannot recover. The judgment is AFFIRMED.